My name is Michael Bigelow, and I represent the appellant, Scott Lopez. I think I would like to reserve two minutes. It may be that I don't. I would ask the Court to be a little flexible. In this case, the appellant was fan-danced, shined on, and ignored for almost two years, maybe a little bit over two years. He repeatedly requested to the right to represent himself. He requested the right to engage in a phoretic holoquy, and it was denied until the day of trial when the trial judge decided to engage in a brief holoquy, an insufficient holoquy, if a holoquy is required at all. But then made the decision on a wrong ground. He decided that he shouldn't rep the defendant, the appellant shouldn't represent himself because he was going to be in trouble immediately. Prior to that, however, April 26th, he made an unambiguous request to represent himself. How do we know it was unambiguous? Because the trial court understood him to be asking for self-representation. The trial court says to counsel, he's not representing himself, you are still the lawyer. November 17th, 2004. Well, counsel, we got the chronology. I mean, you did a nice job in your brief of laying it all out. But I guess I'm stuck on this. Why does it matter what happened leading up to the May 30th date? Because that's the date you finally have a ruling. Your Honor, excuse me, I apologize for this. I've got the most expensive bionics known to man, and I've got fresh batteries in them. I need to ask you to really lean into that microphone if you wouldn't mind. I apologize, but you know. No problem. Is that better? Thank you. Sure. No, I'm sorry. My question was, does it matter what happened leading up to May 30th? If we accept your proposition that he made an unequivocal request, don't we then focus on the May 30th ruling? No, we don't, because up to that point, he has made the request and he has been denied, and he's been denied repeatedly. He doesn't have to make another request. He doesn't abandon his right by not making another request. If he hadn't made a request on actually it was May 17th and trial was May 30th, you understand the chronology. If he hadn't made the request, his right was denied effectively as of April 26th. Well, but you say denied, but in terms of prejudice to him, that really only arises once trial comes around, right? We're not really interested in prejudice at this point. What we're interested in is whether he has the right to represent himself. FREDA makes it very clear he does have that right. If that right is denied, that's the end of the game. If he's not. If it's wrongfully denied, at least. If he is completely out of his mind, does he have a right to represent himself? No. Okay. But he wasn't completely out of his mind. In context, he may have disagreed. He may have been argumentative. Look, there's not a trial court in the world who wants to deal with pro se defendant pro per defendant. There's not a prosecutor in the world who wants to deal with a pro per defendant. Sometimes you prefer to have somebody pro se than a lawyer who lies. Yeah, well, I've been doing this for 45 years and I ain't ever seen it, Your Honor. I'm sorry. I apologize. You may not have, but I have. You as a judge, you as a judge want me there as a judge. You as a judge want me there as a buffer between you and the defendant to solve these kinds of problems. Not necessarily. Not necessarily. You know, you're talking about 45 years. I only have 42 years on the bench. You lift me up, then. And I disagree with you. And I respectfully disagree with you, Your Honor. Let me ask the following question. You say that on April 26th, there was an unambiguous request to represent himself. Yes. Point me to the language that constitutes an unambiguous request. In my supplemental excerpts of records, the motion he filed on April 26th, he attempted to file, which miraculously showed up after everybody said, no motion has been filed, it showed up at page, at page, at page, at page 706, 705 of the clerk's record, Your Honor. That's pretty unambiguous. But more importantly And what does the motion say? Notice of motion and motion to act as counsel pro per. Please be advised that on the 26th day of, he's got 2003, April, in the above-entitled court, this defendant will move the court for an order granting defendants pro per status in the above case as soon as thereafter can be heard. There's a declaration that goes on. It's a four-page declaration that says, I want to represent myself. I know what I'm doing. I'm doing it voluntarily and with full and complete knowledge. That's a pretty powerful request. Now, here's the other point, that during the nothing in Ferretta, nothing in Ferretta or any other, any other Supreme Court president says that counsel can't make the request for the defendant. And don't forget what we're in, there are two parts to the request. I want to represent myself. Okay, fine, let's have a colloquy. Now, knowing all of these things in, from the colloquy, but with the judge, and a colloquy with the judge is required, I submit, not a form, not a motion, there's no Supreme Court precedent demanding that a form be filed or that a request be made by a form. It just doesn't exist. I argue that in my brief, I point that out in my brief. Counsel says he wants to represent himself on April 26th. No, counsel says, and I'm reading, he has expressed an interest in possibly representing himself under Ferretta. And the judge understood that to be a request for self-representation. But you put that in conjunction with the motion that was filed on the 26th. But here's the other problem, that, and this is in response to Your Honor's question, all during these attempts, all during these attempts, these denials, they're all predicated on, the courts say, I will hear your motion, as long as you fill out a, I mean, I will hear your request as long as you prepare a motion. But Ferretta doesn't require that. I mean, I'm with you, but so that's why I look at May 30th, and he's pretty damn clear on May 30th that he wants to represent himself. I'll grant you that. But the judge says, I can't find that this waiver would be voluntary, because he's telling me this is involuntary. I mean, that's how I read it. He's saying, I don't want to represent myself. I want good counsel. You're not giving it to me, and so you're coercing me into representing myself. He does say that. And if that is the only thing we focus on, if that is the only thing you focus on, I lose. But you can't ignore what happened during those two years previous. This Circuit's authority says, and I'm sure I cited it in a brief someplace, this Circuit's authority says that once he makes a request and it is denied, he didn't have to renew it. But our – I mean, you can cite our Circuit's authority. We were just reminded yesterday that that has no place. Ferretta doesn't say it. Tovar doesn't say it. There's no Supreme Court precedent. There's no case that says that on the facts that were developed as of May 30th, this trial judge was compelled or required to grant his request. Because other Supreme Court authority says once it's denied, he has been denied a Sixth Amendment right to represent himself. Game over. Nothing else matters. But let's – and here goes my two minutes. But let us – let us deal with that day. He has tried every argument he can to be heard by the Court. He's tried every argument. Now, is he under duress? What kind of duress is he under? He's not under duress. He is not filing it under duress. He's making an argument to the Court that hopefully will get the Court to listen to him. The Court hasn't listened to him up to that point. What the Court has been playing is a great game of gotcha. I'm going to put it off and put it off and put it off and put it off and put it off until the defendant comes in and says something that is going to permit me to deny the case and survive on appeal. Now, that's just plain not fair. And that's what this Court was doing, this Court collectively. Now, his duress was not because – was not because trial counsel was incompetent. His duress was trial counsel is not doing what I am asking it to do. I want trial counsel to do something. They're not doing it. It's not that they're inadequate. They're just not sufficient to my need. Okay. We've got your argument. Let's hear from the State. We've taken you over time, but we will give you a chance to respond. I appreciate that. Good morning. May it please the Court. Christina Hitomi Simpson on behalf of Respondent. I'd like to start with that the right to self-representation is not automatic, and unlike the right to counsel, it does not attach until it is asserted. And a constitutionally valid waiver of counsel is a necessary prerequisite in order to be given the right to self-representation. Here, there was no constitutionally valid waiver. That is because Defendant Scott refused to acknowledge the rights and responsibilities that came along with self-representation. What do you do with that motion on April 26th? That actually is a little troublesome to me. I was actually unaware that any motion was actually filed before the trial court. I know that at a later date, a number of motions were written by the Defendant and that he ultimately wanted filed by his trial attorney. So you say that motion was, there's no, we do not know if the court ever had that April 26 motion? From my reading of the record, it did not appear that the trial court was in receipt of any such motion. It was more that it was in receipt of the trial counsel's statement that the Defendant was, as you quoted, considering going pro per, considering it. However, at that point in time. Excuse me, does that mean we have a factual dispute as to whether or not that motion was in the, was before the, was before the State trial judge? No, I don't believe there's a factual dispute. You say he didn't have and he says he did. That sounds like a dispute. I don't believe there's any factual dispute in this case. I'm sorry. But. Well, help me out then. Because you say, it's not in the record, that we can't tell from the record, you're saying you're sure that the trial court didn't have it? Tell me what you think with respect to that written motion. Did the trial judge have it or not? I'm willing to accept that the trial judge did have it and proceed under that ground. Okay. And in fact, in this case, really, as Your Honor pointed out, it doesn't really matter what occurred on April 26th. That was the day of arraignment in this case. The Defendant hadn't even spoken to his trial counsel so far as the record appears. I don't say that, I don't recollect having said it doesn't matter what happened on that day. Well, what I'm saying is that the key date in this case is May 30th, 2006, two years down the road, where he actually made this Faretta motion and the court considered it and determined that it couldn't grant it even if it wanted to. So the key date is when he makes the Faretta motion? The key date is the court's ruling, the trial court's ruling. Yes, Your Honor. No, I asked a different question. Is the key date when he makes the Faretta motion? The key date is when the court makes the ruling. So in your view, if he makes a proper Faretta motion and the court doesn't get around to ruling it until the day before trial, two years later, the fact that he made a motion two years earlier that's unambiguous doesn't matter?  The key date is when the trial court has to make a ruling, whether it has to be made that day or whether it can be made at a later point in time. Oh, boy. But I'd like to move on to just the what exactly the trial court's rule. Why don't you stay on that point, because it doesn't sound like Judge Fletcher is persuaded of it. I mean, I asked the question. I don't think it was Judge Fletcher. I think it was me who asked the question to your opponent. What are we supposed to do with this two-year saga, which I think everyone would agree was not fair at all to the defendant? He was getting a runaround. You can see that, right? So what are we supposed to do with that two-year period leading up to May 30th? Is it just we just ignore everything that happened and focus on that one day, the day of the trial was supposed to start, or what? That's what I – that's the question I put, and I don't think you've given a satisfactory answer to Judge Fletcher. Yes, Your Honor. I don't believe we should ignore what led up to the May 30th ruling. Of course, we have to take that decision in context, and it's in the context of all of these Marsden-Ferretta kind of requests that were made in conjunction with each other. And I think that it's actually in light of that two-year history that the trial court's ruling becomes clear as to why it found that there was no valid waiver. And in this case, there was this long period of time where the defendant was saying, I might want to represent myself, but I don't really want to represent myself. I want a new attorney, you know, X, Y, and Z. And I think that when you consider the record in its totality, that that is when it becomes clear that the trial court's ruling was correct in the sense that the defendant never was able to take the step of actually acknowledging the responsibilities of self-worth. It was a direct representation, which is a prerequisite to the granting of his Ferretta request. And although that there was this long period of time where the court kind of didn't exactly engage him too deeply as to what he wanted, I believe that from the record you can see that the court was more concerned with protecting the defendant's rights and in making sure that he really understood what he was getting into before just accepting his statement that, you know, I might want to go pro-poor. And I think the key finding here is that not only was there this lack of a knowing and intelligent waiver, but there was also kind of this emotional aspect to it where these requests and these statements were made in the context of the denial of a Marsden motion or in a kind of an emotional outburst. And I know that I cited some case authority in my briefing about how when a statement is made in conjunction with an emotional outburst, that there's, that is something to be taken into consideration as to whether the, you know, determination as to this came from an actual desire for self-representation or whether the defendant's statements are more of a, you know, outburst in the sense of please give me a new attorney and if you don't, I'm going to go pro-poor or a threat, you know, to do some sort of action. And in this case, I think it can be found based on the record in totality that there was not an actual unequivocal request for self-representation. That was also combined with the knowing and intelligent valid waiver. And in that case, that's why habeas relief is not warranted. If there are no further questions, I will end this event. Thank you. Two minutes. I really appreciate that. The defendant never once said, I don't want to represent myself. Never once said that. All of his requests were, I want to represent myself. If I'm trying to figure out what the position the trial judge is in, even assuming that we have an unambiguous FARETA motion filed on April 26th, on the day of the arraignment, and at an open court, his attorney says he's indicated he might possibly want to file a FARETA motion. Let's assume that that's an unambiguous FARETA request right then. What do we do with the succeeding conversations? And there are a lot of them as we go forward, where he seems to be not asking for FARETA, but rather asking for a margin hearing and asking for a better lawyer. Is it possible, consistent with a reasonable interpretation of controlling Supreme Court case law, that that's permissibly interpreted as backing away from what had been, had it been standing alone, an unambiguous FARETA request? He doesn't say, I want a better lawyer. First of all, a number of those requests were foisted on him by trial counsel. Trial counsel comes in, for example, at one point and says, I don't think he understands the difference between FARETA and Marsden. Defendant says, I know the difference. I know what a FARETA motion is. That's what I want to do. Judge says, we're going to have a Marsden motion. That happens actually a couple of times in different contexts. But he doesn't back away. He accedes to the court. The court says, we're going to have a Marsden motion. He can't stand up and say, no, we're not going to have a Marsden motion. I want my FARETA motion. He accedes to the court. He's trying to do what the court wants him to do. But then trial counsel, you know, Marsden motion denied. He goes back into open court and he says, I can't represent myself repeatedly. I'll stop. Thank you very much. Thank you very much. Thank you both sides for your arguments. Scott v. Lopez now submitted for decision.
judges: Duffy, Fletcher, Watford